**UNITED CLAIMS DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

FILED BY _____ D.C.

MAY 0 3 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

MARCIA TAYLOR,

      Plaintiff

ALEJANDRO N. MAYORKAS,

SECRETARY, U.S. DEPARTMENT OF

HOMELAND SECURITY,

      Defendant.

_____/

**JURY TRIAL DEMANDED**

## COMPLAINT

I, **MARCIA TAYLOR**, Plaintiff, Pro Se, in the above styled case, sue defendant(s) ALEJANDRO N.

MAYORKAS, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY.

This action is filed under 42 U.S.C § 2000e-(f) and 29 U.S.C § 1435.

Date:

Respectfully submitted,

_____ ; Pro Se
Marcia Taylor, Plaintiff, Pro Se
1213 SW 34th Terrace
Cape Coral, FL 33914
Marciataylor1@gmail.com
(954) 394-7448

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the action under 42 U.S.C. § 2000e-(f) and 28 U.S.C. § 1345. Venue is proper in this judicial district under 42 U.S.C. § 2003-5(f)(3) and 28 U.S.C. 1391(b), because it is where a substantial part of the events or omissions giving rise to the cause of action herein occurred.

3. Defendant, Alejandro N. Mayorkas, Secretary, U.S. Department of Homeland Security (DHS), is a Federal Agency, operating under the Executive Branch of the laws of the United Claims of America, pursuant to 40 U.S. Code § 1315.

4. DHS is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 20003(b).

5. Plaintiff filed two cases with The Equal Employment Opportunity Commission ("EEOC") claiming discrimination allegedly caused by Federal Agency under Defendant, Alejandro N. Mayorkas, Secretary, U.S. Department of Homeland Security, as follows:

    (i)  Case No. HS-ICE-02819-2018, and

    (ii) Case No. HS-ICE-00505-2022.

### Case No. HS-ICE-02819-2018:

6. On June 20, 2018, Plaintiff filed EEOC Case No. HS-ICE-02819-2018 to EEOC alleging discriminated against Plaintiff by management of DHS, based on race (African American), Color (black/dark skin), sex (female), age (YOB:1967), and reprisal (participation). Plaintiff claims that She was discriminated against when management intercepted Plaintiff's application for a job offered via Direct Hire, stated to Plaintiff that She could not apply for the job, then placing a less qualified white, Hispanic, male co-worker in the job and ordering the Plaintiff to train the less qualified co-worker.

7. Plaintiff engaged in Settlement of Case No. HS-ICE-02819-2018 with DHS and no settlement was offered by the Agency.

4

**Case No. HS-ICE-00505-2022:**

8.  Plaintiff filed Case No. HS-ICE-00505-2022 during investigation on Case No. HS-ICE-02819-2018 and request Case No. HS-IC02819 and Case No. HS-ICE-00505-2022 to be combined.

9.  On October 31, 2022, EEOC sent Plaintiff a notice titled: Notice of Incomplete Investigation for Marcia Taylor v. Alejandro N. Mayorkas, Secretary U.S. Department of Homeland Security, Case No. HS-ICE-00505-2022.

10. On January 10, 2023, DHS sent Plaintiff a notice titled: Procedural Dismissal of Case No. HS-ICE-00505-2022, claiming that Case No. HS-ICE-00505-2022 was untimely filed.

11. All conditions precedent to the filing of this suit have been performed or have occurred.

## FACTUAL ALLEGATIONS

Plaintiff alleges the following:

12. Plaintiff settled past EEOC cases filed for discrimination against the Agency, as follows: EEOC Court case # 510-2014-00365X, EEOC Case HS-ICE-08388-2009, EEOC case HS-ICE-00716-2013, EEOC case # HS-ICE-26580-2016 and EEOC case # HS-ICE-01004-2018.

13. Plaintiff claims that settled EEOC cases involve members of management that are named in this above filed case.

14. Plaintiff was promoted to a GS-9 Mission Support position in 2015.

15. Plaintiff claims that immediately after Plaintiff's promotion into the GS-9 position, management created a hostile working environment and began retaliation and harassment upon the Plaintiff, by assigning Plaintiff with GS- 12/13/14 work tasks (FFMS financial management system), that was not listed on Plaintiff's job description.

16. Plaintiff claims that no other employee at the GS-9 position was assigned FFMS work tasks from June 2015 to December 08, 2018.

5

17.  Plaintiff claims that DHS management continued to assign Plaintiff more GS-12/13/14 work tasks from around June 2015 to December 2018.

18. On March 20, 2018, Plaintiff applied for a promotional position that matched the GS-12/13/14 work tasks assigned by management from June 2015 to December 2018 via Job Announcement OPM-ERO-10141561-DHS-ABF.

19. Job Announcement OPM-ERO-10141561-DHS-ABF, required knowledge of the FFMS financial management system to qualify for consideration.

20. Job Announcement OPM-ERO-10141561-DHS-ABF accepted applications via Online submission and Direct Hire submission.

21. Both the Plaintiff and the selected white, Hispanic, male selectee missed the deadline for online application submission of Job Announcement OPM-ERO-10141561-DHS-ABF.

22. Both the Plaintiff and the selected white, Hispanic, male selectee, applied for Job Announcement OPM-ERO-10141561-DHS-ABF via the Direct Hire process.

23.   On or around June 19, 2018, DHS management stopped Plaintiff's job application from being processed for Direct Hire that was sent by Plaintiff via chain-of-command and via FedEx hand delivered mail addressed directly to the Field Office Director (hiring official).

24. Management replied to Plaintiff with an email under Job OPM-ERO-10141561-DHS-ABF and stated, "You cannot apply for this job … you have a PHD, good luck".

25. Management did not give Plaintiff a reason why Plaintiff could not apply for Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

26. Management treated the Plaintiff different than the white, Hispanic, male employee that was selected for the job and showed favoritism to the same selected employee.

27.   Management stated that the Plaintiff was treated differently from the white, Hispanic, male

selectee because the selected candidate had special circumstances.

28. Management did not define what special circumstances were considered for the selected white, Hispanic, male employee.

29. Management did not show the same consideration for special circumstances to the Plaintiff during the hiring process.

30. Management admitted to preventing the Plaintiff's application from being forwarded by the chain-of-command process to the hiring official.

31. Plaintiff claims that specific examples of discrimination and reprisal against Plaintiff includes the following:

(a) No other candidates were blocked from applying for the Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

(b) No other candidate's application was discarded or blocked from being processed during the Direct Hire process for Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

(c) No other candidate received an email stating that they could not apply for the job OPM-ERO-10141561-DHS-ABF via Direct Hire.

(c) Both the Plaintiff and the white, Hispanic, male employee submitted applications via the "Direct Hire process for Job OPM-ERO-10141561-DHS-ABF.

(d) The Plaintiff was the only applicant in the Miami District office performing FFMS financial management tasks when Job OPM-ERO-10141561-DHS-ABF via Direct Hire was announced.

(e) The Plaintiff's Direct Hire application for Job OPM-ERO-10141561-DHS-ABF via Direct Hire was the only application blocked from being processed by the hiring official by DHS management.

7

(e) The selected white, Hispanic, male employee candidate was placed in the job without evidence that he submitted his Direct Hire application to the hiring official, as required in the announcement under Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

(f) The EEOC investigation found proof that the staffing office does not have record of receiving the selected white, Hispanic, male employee candidate's application for the position he was hired for under Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

(g) The EEOC investigation found proof that the Plaintiff's application was received by DHS management and was not forwarded to the hiring official for consideration under Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

(h) The EEOC investigation found that management altered the hiring certificate by hand-writing the selected white, Hispanic, male employee candidate's name onto the completed hiring certificate, after a selection was made for another candidate for Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

(i) At the time a selection was made for Job OPM-ERO-10141561-DHS-ABF via Direct Hire, the hiring certificate did not include the selected white, Hispanic, male employee's name.

(j) The EEOC investigation found that the selected white, Hispanic, male employee candidate was hired using an altered hiring certificate for Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

(k) The EEOC investigation found that there was no explanation as to why or how the selected white, Hispanic, male employe candidate was hired using an altered certificate for Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

(l)  The EEOC investigation found that DHS could not explain why the white, Hispanic, male employee given special consideration over the Plaintiff, during the hiring process under Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

(m) The EEOC investigation found that if the Plaintiff's application was processed, Plaintiff was qualified for Job OPM-ERO-10141561-DHS-ABF at the GS12 pay scale.

32. After the selected white, Hispanic, male employee was promoted under Job OPM-ERO-10141561-DHS-ABF via Direct Hire, Plaintiff was ordered by DHS management to train the selectee.

33. After training the selected, DHS management ordered the Plaintiff to train all management and the entire Miami Field Office on use of FFMS.

34. On December 08, 2018, Plaintiff separated from the Agency because of the overwhelming. hostile work environment, as described above, and sited constructive termination for the reason of Plaintiff separation.

35. Around April 19, 2019, after Plaintiff separated from DHS for four (4) months, DHS Miami District management sent a notification to Plaintiff's personal email account, advising Plaintiff that She was a subject of an internal DHS ICE investigation.

36. Documents in the DHS ICE investigation against the Plaintiff were backdated to 2017.

37. Plaintiff claims that management further retaliated against Plaintiff by initiating a false DHS internal local criminal investigation against Plaintiff for: allegedly making unauthorized ATM withdrawals while on approved official travel, and allegedly committing a crime by writing a bad check to the Federal Government that bounced.

38. All ATM withdrawals made by Plaintiff were approved by management both before and after all travel.

39. No limit for withdrawals was established by management at any time before, during or after

travel.

40. Plaintiff contacted the travel credit card company prior to making withdrawals and all withdrawals were authorized by the travel credit card company.

41. Management did not advise Plaintiff of any withdrawal limits before, during or after travel.

39. Management made a final derogatory ruling against Plaintiff without taking into consideration that all ATM withdrawals were approved by management before, during and after travel and that Plaintiff did not write a bad check that bounced to the Federal Government.

42. Management did not produce a bad check that bounced, written by Plaintiff at any time during the investigation.

41. Management denied Plaintiff the right to appeal the final decision of the Federal internal local criminal investigation.

43. Management notified Plaintiff that a derogatory written final decision in the local Miami office, noting that Plaintiff made unauthorized ATM withdrawals during travel and wrote a bad check that bounced to the Government.

42. All billing for the Plaintiff's travel card was paid in full at the time of the investigation.

43. Plaintiff claims that DHS has prevented Plaintiff from re-applying for a job with the Agency because of the derogatory written final decision held at the local Miami office.

44. Plaintiff suffered emotional distress because of the ongoing discrimination, harassment, and retaliation after separation from DHS because of the false allegations made in the complaint, just like She endured while employed by DHS.

45. Management advised Plaintiff that a permanent notation of the adverse finding of guilty will, indefinitely remain in the Miami District local personnel file.

44. Plaintiff is blocked from re-employment with DHS due to the derogatory document placed

in Plaintiff's file by DHS management.

45. Plaintiff notified EEOC that She had proof that DHS management continued to discriminate against Plaintiff by not re-hiring Plaintiff for the same job She was prevented from applying for in EEOC Case No. HS-ICE-02819-2018.  DHS would not allow DHS to add the new proof of discrimination to case EEOC Case No. HS-ICE-02819-2018 for investigation.

46. Plaintiff filed EEOC Case No. HS-ICE-00505-2022, on or about December 02, 2021, upon DHS Counsel's instruction, claiming further discriminated against based on race (African American), Color (black/dark skin), sex (female), age (YOB:1967), and reprisal (participation), by DHS management.

47. Plaintiff claims that She was discriminated against when She reapplied for several positions like She held prior to separating from the DHS, and qualified for a higher GS-12, but DHS management did not select Plaintiff for the job and selected several candidates that were less qualified.

48. Plaintiff claims that some candidate(s) hired at the GS-12 level were related by family or otherwise closely connected to DHS management.

49. Plaintiff claims that Plaintiff complaint under Case No. HS-ICE-00505-2022, was timely filed with EEOC, because She was not aware of the candidates that were selected until the information was proved to Plaintiff during EEOC investigation in Case No. HS-ICE-02819-2018.

50.  The DHS representative confirmed with the Plaintiff that Case No. HS-ICE-00505-2022 would be added to Case No. HS-ICE-02819-2018, then changed his mind and notified the Plaintiff that he will not add the new issues under Case No. HS-ICE-00505-2022 to the original Case No. HS-ICE-02819-2018.

51. The DHS representative did not provide any reasoning for not allowing the two cases to be combined during the EEOC investigation.

52. Plaintiff notified the EEOC investigator, of further discrimination by retaliation during EEOC investigation on Agency Case No. HS-ICE-02819-2018, and Plaintiff advised the EEOC investigator that Plaintiff learned of further discrimination when reviewing the ROI on Agency Case No HS-ICE-02819-2018.

53. Plaintiff believed the management (selecting official) in Case No. HS-ICE-02819-2018, was acting in retaliation against Plaintiff by notifying Plaintiff that a derogatory document, for alleged abuse of travel card and writing a bad check to the Federal government, will be kept in the Plaintiff's local employee file in the Miami office.

54. Management made a final derogatory ruling against Plaintiff without taking into consideration that all ATM withdrawals were approved by management before, during and after travel and that Plaintiff did not write a bad check that bounced to the Federal Government.

55. Around December 05, 2019, Plaintiff qualified for and was interviewed for re-hire by DHS, Miami District for Job No. LAG-FMI-10615195-DH-0301-12, in Miami Florida.

56. Plaintiff was qualified for Job No. LAG-FMI-10615195-DH-0301-12 and several less qualified candidates were selected over the Plaintiff.

57. During investigation of Case No. Plaintiff provided EEOC with a list of several new candidates that were hired at the GS-12 pay scale, over the Plaintiff, while the Plaintiff was more qualified, and request the added proof of discrimination to be added to Case no. HS-ICE-02819-2018 for further investigation.

58. The DHS Counsel refused to add the added claims of discrimination to Case No. HS-ICE-02819-2018 and instructed Plaintiff to open a new case.

59. Plaintiff followed the Agency's instructions and contacted EEOC to initiate a new case for discrimination (Case No. HS-ICE-00505-2022.

60. Plaintiff requested the New Case No. HS-ICE-00505-2022 be combined with Case No. HS-ICE-02819-2018 and the DHS refused to do so.

61. EEOC closed Case No. HS-ICE-000505-2022 without the Plaintiff's consent or notification, and then reopened the case when the Plaintiff objected to the case being closed.

62. On October 31, 2022, EEOC issued a Notice of Incomplete Investigation for Marcia Plaintiff v. Alejandro N. Mayorkas, Secretary U.S Department of Homeland Security, to Plaintiff, advising the investigation for Case No. HS-ICE-00505-2022.

63. On January 10, 2023, EEOC issued to Plaintiff, Procedural Dismissal, stating that Case No. HS-ICE-00505-2022 was dismissed for untimely EEOC Counselor contact.

64. Plaintiff claims that because She brought the issue of discrimination to the EEOC investigator's attention during investigation of Case No. HS-ICE-02819-2018, Plaintiff provided the EEOC investigator with a list of names of the candidates that were hired to substantiate Plaintiff claim, all in a timely manner.

65. At the time of investigation for Case No. HS-ICE-02819-2018, DHS requested Plaintiff to initiate Case No. HS-ICE-00505-2022, rather than add the claim for discrimination for Job No. LAG-FMI-10615195-DH-0301-12 (as described above).

66.  Plaintiff claims that Case No. HS-ICE-00505-2022 should be combined with Case No. HS-ICE-02819-2018 in this Court.

(This area is intentionally left blank)

13

## COUNT I

## DISCRIMINATION LEADING TO CONSTRUCTIVE DISMISSAL
## DECEPTIVE OBSTRUCTION DURING COMPETITIVE HIRING PROCESS
## UNAUTHORIZED ADVANTAGE TO IMPROVE EMPLOYMENT PROSPECTS
## AND RETALIATION

67. Plaintiff re-claims and incorporates by reference the allegations set forth in paragraph 1-66 above.

68. Plaintiff claims that She was singled out by management and treated differently during the hiring process for Job OPM-ERO-10141561-DHS-ABF.

69. Plaintiff claims the discriminatory acts against Plaintiff were unwelcomed, sufficiently severe and pervasive that detrimentally affected her.

70. Plaintiff claims that the acts of DHS management were subjectively hostile and abusive, and would be viewed as objectively hostile and abusive to a reasonable person.

71. Plaintiff claims that She complained to supervisors about the hostile work environment, discrimination and harassment She endured, and DHS supervisors had actual or constructive knowledge of the ongoing hostile work environment, discrimination, and harassment.

72. Plaintiff claims that DHS failed to take prompt and appropriate remedial action to prevent or correct further hostile work environment, discrimination, and harassment of Plaintiff.

73. Plaintiff claims that it is common practice in the DHS Miami District Officer, for management to hire their friends and relatives with no former experience or knowledge of the job, instead of hiring skilled employees who are more qualified and knowledgeable and/or are performing the job, like occurred with Job OPM-ERO-10141561-DHS-ABF via Direct Hire.

74. Plaintiff claims that management discriminated against Plaintiff because She is in a

14

protected class, and because management wanted the selected white, Hispanic, male employee, in the position.

75. Plaintiff claims that management retaliated against Plaintiff when She ceased performing the FFMS (GS-12/13/14) work tasks She was assigned from 2015 to 2018.

76. Plaintiff claims that management knew or should have known that the selected white, Hispanic, male employee candidate could not complete the GS-12/13/14 tasks after being hired, because he did not have knowledge of the FFMS financial Management system prior to being selected.

77. Plaintiff claims that management created a hostile work environment and retaliated against Plaintiff by ordering Plaintiff to provide training for the FFMS (GS-12/13/14) work tasks for the white, Hispanic, male employee selected under Job OPM-ERO-10141561-DHS-ABF, and further ordering Plaintiff to provide FFMS training for or members management and to all Mission Support staff in the entire Miami District.

78. Plaintiff claims that She engaged in protected activity when She filed a complaint for discrimination based on race, color, sex and age, hostile work environment, harassment, and retaliation.

79. Plaintiff claims that management at DHS knew of Plaintiff's past EEOC complaints because the same members of management involved in Case No. HS-ICE-02819-2018 were also involved in Plaintiff's past EEOC complaints for discrimination.

80. Plaintiff claims that the EEOC investigation confirmed that Plaintiff's application was stopped from being submitted by management through the chain of command and via FedEx hand delivery.

81. Plaintiff claims that the EEOC investigation confirmed that DHS admitted to stopping Plaintiff's Direct Hire job application from being processed.

82. Plaintiff Claims that the EEOC investigation confirmed that DHS has no record of how the

15

selected white, Hispanic, male candidate was selected for the position.

83.  Plaintiff claims that The EEOC investigation confirmed that DHS altered the hiring certificate and hand wrote the selected candidate's name on the selection document after the selection was made.

84.  Plaintiff claims that the EEOC investigation confirmed that DHS processed the altered hiring Certificate and placed the selected candidate in the position without authorized documentation.

85.  Plaintiff claims that the EEOC investigation confirmed that DHS did not follow federal policy during the hiring process, as it pertained to the Plaintiff's and the selected white, Hispanic, male employee that was selected for position under Job OPM-ERO-10141561-DHS-ABF.

86.  Plaintiff claims that the EEOC investigation confirmed that DHS found that the Plaintiff was qualified under Direct Hire and would have been considered for the job if Plaintiff application was not discarded and stopped by DHS.

87.  Plaintiff claims that the hostile work environment and retaliation She endured would dissuade a reasonable employee from making complaints of discrimination and harassment.

88.  Plaintiff claims that DHS created an adverse working environment by assigning GS-12/13/14 level work to Plaintiff, while She was paid in a GS-9 position, and then ordered Plaintiff train GS-12/12/14 employees along with management, on the GS-12/13/14 tasks She was assigned.

89.  Plaintiff claims that DHS stopped Plaintiff application for a job vis Direct Hire She was performing and qualified for.

90.  Plaintiff claims that DHS assigner Plaintiff job duties at the GS 12/13/14 level, without adjusting Plaintiff rate of pay, from 2015 to 2018.

91.  Plaintiff claims that the EEOC investigation confirmed that management told Plaintiff that

Plaintiff job application for Direct Hire was stopped and discarded because management decided that Plaintiff could not apply for the job.

92. Plaintiff claims that other employees who were less qualified for the job were allowed, by management, to apply for the job via Direct Hire.

93. Plaintiff claims that management gave the selected, white, Hispanic, male candidate preferential treatment and special consideration during the Direct Hire process.

94. Plaintiff claims that management did not give Plaintiff the same preferential treatment and special consideration, during the Direct Hire process, that was given to the selected, white, Hispanic, male candidate.

95. Plaintiff claims that HR management witnesses were unable to explain how the white, Hispanic, male employe that was selected over the Plaintiff, was hired under an altered hiring certificate.

96. Plaintiff claims that the EEOC investigation confirmed that Plaintiff was ordered, by management, to provide training to the selected candidate after the selected, white, Hispanic, male candidate was placed in the job.

97. Plaintiff claims that management retaliated against Plaintiff by ordering Plaintiff to provide further training to the entire Miami District employees on the GS 7 to14 level and management, for work She was solely performing from 2015 to 2018.

98. Plaintiff claims that the Agency failed to present any legitimate non-discriminatory reasons for its selection of less the qualified individuals identified by the Plaintiff under Job OPM-ERO-10141561-DHS-ABF and Job No. LAG-FMI-10615195-DH-0301-12.

99. Plaintiff claims that on 12/08/2018, Plaintiff submitted a letter of resignation, stating that She was forced to resign from Plaintiff career by intentional harassment and retaliation from DHS.

100.    Plaintiff claims that the retaliation endured by Plaintiff would dissuade a reasonable

17

person from making complaints of discrimination and harassment.

**COUNT II**

**FALSE OR FRAUDULENT CLAIM OF UNAUTHORIZED ATM WITHDRAWAL
AND WRITING A BAD CHECK THE BOUNCED TO THE FEDERAL GOVERNMENT**

101.    Plaintiff re-claims and incorporates by reference the allegations set forth in paragraph 1-100 above.

102.    Plaintiff claims that DHS discriminated against Plaintiff based on prohibited personnel practices as claimed in Plaintiff complaint filed with EEOC.

103.    Plaintiff claims that DHS retaliated against Plaintiff by initiating an internal, local, criminal investigation against Plaintiff after She separated from the Agency.

104.    Plaintiff claims that the Agency falsely claims that She violated Plaintiff former travel card and wrote a bad check to the Federal Government the bounced.

105.    Plaintiff claims that the Agency cannot produce a bad check written by the Plaintiff.

106.    Plaintiff claims that She did not violate the terms of Plaintiff former travel card because all use of the travel card was approved by management before, during and after travel.

107.    Plaintiff claims that DHS placing a derogatory document in Plaintiff permanent employee file to prevent Plaintiff from being rehired in retaliation.

108.    Plaintiff claims that DHS is using the derogatory document to continue to block her from applying for re-employment with DHS.

109.    Plaintiff claims that DHS made false allegations in a written document, claiming that She made unauthorized ATM withdrawals while on authorized official travel.

110.    Plaintiff claims that DHS made false allegations in a written document claiming that She wrote a "Bad check" to the Federal Government "that bounced".

18

111. Plaintiff claims that the prohibited personnel practices would dissuade a reasonable person from applying to DHS for re-employment.

112. Plaintiff claims that DHS management initiated an internal investigation against her in retaliation and reprisal.

113. Plaintiff claims that DHS management made a false statement against Plaintiff by writing that Plaintiff made several unauthorized ATM withdrawals while on official government travel.

114. Plaintiff claims that DHS management made a false statement against Plaintiff by writing that Plaintiff wrote a bad check that bounced to DHS.

115. Plaintiff claims that DHS management is keeping a derogatory document of the alleged criminal investigation against her, in the local Miami District office indefinitely.

116. Plaintiff claims that DHS management created the derogatory document against Plaintiff So, all future job applications made by Plaintiff can be denied for re-employment.

117. Plaintiff claims that the criminal investigation conducted against Plaintiff by DHS would dissuade a reasonable employee from making complaints of discrimination and harassment.

118. Plaintiff claims that DHS ignored the fact that Plaintiff's travel card was paid in full at the time of the criminal investigation generated by DHS.

119. Plaintiff claims that DHS has allowed other employees and management time to pay off the balance of the travel card with no investigation for a criminal act and derogatory statement placed in their Miami District local employment file.

120. Plaintiff claims that DHS retaliated against Plaintiff by conducted a local criminal investigation upon Plaintiff and failed to state the DHS policy that substantiated the criminal investigation for making authorized ATM withdrawals, and DHS also failed to provide a copy of the bad check alleged to have been written by the Plaintiff.

## COUNT III

### ENGAGEMENT IN NEPOTISM
### AND EEOC FAILURE TO INVESTIGATE CLAIM

121.     Plaintiff re-claims and incorporates by reference the allegations set forth in paragraph 1-120, above.

122.     Plaintiff claims that the candidate selected for Job OPM-ERO-10141561-DHS-ABF was a friend and/or relative of management involved in selection.

123.     Plaintiff claims that the agency discriminated against Plaintiff by selecting several less qualified candidates while the Plaintiff applied for re-hire under Job No. LAG-FMI-10615195-DH-0301-12.

124.     Plaintiff claims that the candidate selected for Job LAG-FMI-10615195-DH-0301-12 were friends and/or relatives of management involved in selection.

125.     Plaintiff claims that during the EEOC investigation of Case No. HS-ICE-02819-2018, Plaintiff Provided the EEOC investigator with a list of candidates that were selected under Job No. LAG-FMI-10615195-DH-0301-12 that were alleged to be friends and/or family of management.

126.     Plaintiff claims that She requested EEOC to combine the list with Case No. Case No. HS-ICE-02819-2018.

127.     Plaintiff claims that EEOC instructed Plaintiff to the DHS Counsel to request that DHS add list of candidates hired under Job No. LAG-FMI-10615195-DH-0301-12, to Case No. HS-ICE-02819-1018.

128.     Plaintiff claims that the DHS Counsel denied Plaintiff request to add the issue list of candidates hired under Job No. LAG-FMI-10615195-DH-0301-12 to be added to Case No. HS-ICE-02819-1018 and instructed Plaintiff to open new Case No. Case No. HS-ICE-00505-2022.

20

149.     Plaintiff claims that She was, by far, more qualified based on Plaintiff work experience, professional qualifications, and education, than the other selectees for the position in Job OPM-ERO-10141561-DHS-ABF and Job No. LAG-FMI-10615195-DH-0301-12, and would have been selected, but for, the Agency's discrimination against her.

129.     Plaintiff claims that DHS further discriminated against Plaintiff by failing to investigate the claims made in Case No. HS-ICE, 00505-2022.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, prays that the Court will grant the following relief:

Order DHS to:

1) Order DHS to apologize to Plaintiff for causing discrimination and loss of Plaintiff's job.

2) Award Plaintiff Reinstatement of Plaintiff's job at the GS 13/14 step 10 level, in a Remote position (like settled with prior cases) where Plaintiff can work Remotely and outside of direct environment to avoid further discrimination and retaliation.

3) Cease all discrimination and harassment against Plaintiff.

4) Develop and implement appropriate and effective measures designed to prevent discrimination, harassment, and retaliation against Plaintiff, including but not limited to policies and training for management.

5) Remove all derogatory documents held in the local Miami District office and HR office, that states that Plaintiff made illegal, or otherwise, made unauthorized ATM withdrawal via Plaintiff's Travel Card during authorized Federal Travel.

6) Remove all derogatory documents held in the local Miami District office and HR office, that states that Plaintiff wrote a bad check that bounced to the Federal Government.

7) Instruct all hiring officials not to block or prevent Plaintiff's application(s) from being considered.

8) Award compensatory damages to Plaintiff in the amount of $650,000.00 to fully compensate Plaintiff for injuries caused by DHS's discriminatory, harassing, and retaliatory conduct, causing constructive termination and loss of Plaintiff's career.

9) Award punitive damages of 9 times compensatory damages or $4,950,000.00.

10) Award pain and suffering in the amount of $400,000.00.

11) Order DHS to pay all taxes, costs and legal fees separate from any settlement amount; and

12) Award such additional relief as justice may require, together with Plaintiff's costs and disbursements in this action.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 28 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

Dated:   5/1/2023

By:

Marcia Taylor, Plaintiff, Pro Se
1213 SW 34th Terrace
Cape Coral, FL 33914
Marciataylor1@gmail.com
(954) 394-7448

Marvin Taylor
1213 SW 34 Terrace
Cape Coral, FL 33914

U.S.M.S.
INSPECTED
BY

United States District Cou
EEOC Department of Hand
400 North Miami Avenu
Miami, Florida 33128

